Harold Jerome ATKINS and William
Forte, Appellants,

v.

UNITED STATES of America,
Appellee.

No. 16382.

United States Court of Appeals
Ninth Circuit.

Sept. 12, 1962.

Rudolph G. Kraft, Jr., and Eleanor M. Kraft, San Francisco, Cal., for appellants.

Brockman Adams, U. S. Atty., David J. Dorsey and Douglas M. Fryer, Asst. U. S. Attys., Seattle, Wash., for appellee.

Before ORR, HAMLEY and MERRILL, Circuit Judges.

ORR, Circuit Judge.

Appellants stand convicted on six counts of an indictment charging them with violations of the federal bank robbery laws, 18 U.S.C. § 2113, and a seventh count charging conspiracy to commit offenses prohibited by § 2113 in violation of 18 U.S.C. § 371. Appellants urge reversal of their convictions on the grounds that: (1) the prosecution failed to present substantial independent evidence of the essential elements of the crime of conspiracy; (2) extrajudicial declarations of each appellant were erroneously admitted; and (3) there was insufficient evidence to convict appellant Forte on any of the counts of the indictment.

To present the picture disclosed by the record we summarize the testimony and view it in the light most favorable to the government. Donald Hall testified that he met appellant Forte in the Hit and Run Room of the St. Regis Hotel in Seattle, Washington on May 10, 1958. Forte asked Hall if he wanted to make some money and drew a diagram on a napkin stating how he was going to rob a bank that was located in "Silvana." Forte outlined to Hall the method to be used in robbing the bank: a car would be stolen and driven to the town of Silvana; Forte's accomplice would go into the bank first; Forte would follow him into the bank and get the money; after robbing the bank they would catch a train at 10:38 and make their escape. Eight or nine days later Hall again met Forte in the Hit and Run Room and told him that he did not want to go through with the robbery of the Silvana Bank. This testimony was admitted by the Court for the jury's consideration only with regard to appellant Forte.

Hall also testified that he had met appellant Atkins in the early spring of 1958 and talked with him during the week of May 19, 1958 at the Hit and Run Room. At that time Atkins stated to Hall that the bank robbery would be "real easy" and he wished that Hall would come along since Forte and Atkins "had made a few dry runs and it looked like a cinch." This testimony was admitted by the Court against appellant Atkins on all counts and against appellant Forte only on the conspiracy count, subject to it being connected through later testimony.

Ralph Firman, a fireman for the Great Northern Railway, testified that he saw appellant Forte in the Ivanhoe Hotel in Vancouver, B. C. on May 13, 1958. At that time appellant Forte told Firman that he had cased the bank in Silvana and that he had a foolproof way of robbing the bank and getting away. Forte also stated that he was going to use the Great Northern train to escape by boarding it south of Silvana. This testimony was admitted by the Court only against appellant Forte.

On May 27, 1958, at about 10:30 a. m., a two-tone green, 1956 Ford, occupied by two men, stopped in front of the Silvana Branch of the Seattle First National Bank. The passenger stepped out of the car and entered the bank, carrying a brief case. He approached the teller's window, drew a revolver from his belt and pointed it at Rudolph Kylling, manager of the bank, and Mrs. Alice Jacobs, an employee of the bank. He ordered them to move back against the wall and to lie down on the floor. He then proceeded to take cash from the teller's cash drawer. This man was identified by Kylling and Mrs. Jacobs as appellant Atkins. The driver of the vehicle also entered the bank and crouched behind the planter, aiming a gun at the bank employees. This man was not identified by Kylling or Jacobs since their view of him was obscured by a planter.

George Engebretsen, a resident of Silvana, testified that at approximately

10:30 a. m. on May 27, 1958 he was at the post office, which is two doors from the Silvana Branch of the Seattle First National Bank. He was returning home along the highway, which runs in front of the bank and saw a two-tone dark green, two-door car going toward the bank and thought he recognized a friend of his in the car. He walked out to the highway to talk to him, but then noticed that it was not his friend. Engebretsen also testified that there was a passenger in the car. Engebretsen identified appellant Forte as the driver of the car.

On the afternoon of the robbery, May 27, 1958, F. B. I. agents found an abandoned two-tone green, 1956 Ford (which had been stolen from Root's Used Car Lot) about two miles south of Silvana, near the Great Northern Railroad tracks.

Ralph Firman testified that he saw appellant Forte on the night of May 27, 1958 at the Copper Door Tavern in Seattle, Washington. At this time appellant Forte asked Firman to go out to Forte's car where Forte told Firman that he had committed the robbery, and "it went off slick." Forte then reached under the seat of the car, pulled out a roll of money and gave $50.00 from the roll to Firman. Forte also threatened Firman by telling him: "If the FBI gets any line on me, I'll know who talked, and if I don't get you, Tony [Atkins] will." Forte also told Firman that he had stolen a 1956 Ford in Everett at six o'clock in the morning and during the robbery Atkins had told the people in the bank to "lay down on their stomach." This testimony was admitted against both appellants on all counts.

Forte again threatened Firman on June 3, 1958 and told him that someone would get to Firman and take care of him if he talked and that Atkins was not a small-time operator, but was a "pro." Forte then required Firman to reach over and pat a gun under Forte's shoulder and stated that if Firman said anything to the F.B.I., Forte would take care of him. Firman again saw Forte about a week later at which time Forte said that he didn't have any money and would

have to alibi out because he couldn't run. This testimony was introduced against both appellants on all counts.

Donald Hall testified that he saw appellant Atkins at least two weeks after May 27, 1958 in the Hit and Run Room in Seattle and that Atkins stated that "he knew how to tumble off the train and that's why Bill [Forte] hurt his knee at the time." Atkins also stated to Hall that only three people, Hall, Atkins and Forte, knew of the robbery and if it ever came out who robbed the bank, that he would get Hall or somebody else would get him. This testimony was admitted against appellant Atkins on all counts and against appellant Forte only on the conspiracy count.

Hall also testified that he talked with appellant Forte about one or two weeks after May 27, 1958 in the Hit and Run Room. At that time Forte told Hall that the train was going pretty fast and this was why he fell off and hurt himself. This testimony was introduced against appellant Atkins only on the conspiracy, count; it was admitted against appellant Forte on all counts.

An examination of the record convinces us that the existence of the conspiracy was established by substantial evidence independent of the extrajudicial statements of the appellant. The robbery was committed by two men, who drove a two-tone green, 1956 Ford, one of whom was identified by two employees of the bank as appellant Atkins. Appellant Forte was identified by Engebretsen as driving a dark green, two-door car toward the bank at the approximate time of the robbery. A green Ford was stolen from a used car lot prior to the robbery and was later found abandoned about two miles south of Silvana, near the Great Northern Railroad tracks. See United States v. Caron, 266 F.2d 49 (2d Cir. 1959); United States v. Avellino, 216 F.2d 875 (3rd Cir. 1954).

We now turn to the extrajudicial statements which appellants allege were erroneously admitted. We find them admissible against the declarant for all

purposes. See Harris v. United States, 283 F.2d 923, 928 (4th Cir. 1960). The admissions of each appellant were corroborated by sufficient independent evidence. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); United States v. Tarricone, 242 F.2d 555 (2d Cir. 1957).

The rule is that the conspiracy having been proven by independent evidence, the declarations of one conspirator, made in furtherance of the conspiracy, are admissible against each coconspirator. Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957); Parente v. United States, 249 F.2d 752 (9th Cir. 1957). While admitting this rule appellants urge that the extrajudicial statements admitted against the non-declarant were not made in furtherance of the conspiracy since they were merely narrative.

It was shown that appellant Atkins' statements to Hall during the week of May 19, 1958 were made after the conspiracy had been formed (Atkins and Forte had already made a few dry runs) and were in furtherance of the conspiracy since Atkins at that time was trying to get Hall to join the robbery attempt.

It is further contended that the admissions made to Hall and Firman after the robbery were not made in furtherance of the conspiracy since the conspiracy had ended. This contention, if true, would be valid. The Supreme Court of the United States in Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949) held that extrajudicial statements could not be admitted against the non-declarant if made after the chief objective of the conspiracy had ended either in success or failure. This position was reaffirmed and summarized in Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957):

> "A vital distinction must be made between acts of concealment done in furtherance of the *main* criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained for the purpose only of covering up after the crime." 353 U.S. at 405, 77 S.Ct. at 974.

The conspiracy charged in the instant case did not end after the bank had been robbed; there was sufficient evidence introduced from which the jury could find that the appellants agreed to conceal the money unlawfully taken from the bank. The criminal aim of the conspiracy was not to commit the robbery, but to make a profit by illegal means. The conspiracy, therefore, continued at least until the fruits of the crime had been disposed of. Furthermore, appellants were charged in the indictment with a conspiracy to possess and conceal money, knowing it had been stolen; and in doing so had conspired to violate 18 U.S.C. § 2113(c). Thus, the extrajudicial statements made to conceal the conspiracy were not made merely to cover up after the crime had been committed, but were made while appellants were in the process of violating a federal statute. Murray v. United States, 10 F.2d 409, 411 (7th Cir. 1926). It is thus apparent that these later admissions were made in furtherance of the conspiracy and were properly admitted against the non-declarant co-conspirator.

We conclude that Forte's extrajudicial declarations made to Firman after the robbery on May 27, 1958 and June 3, 1958 were properly admitted against both appellants on the substantive counts because at the time of their admission there was ample evidence, apart from the admissions and statements of Forte, from which the jury might reasonably infer the existence of a concert of action on the part of appellants. Williams v. United States, 289 F.2d 598 (9th Cir. 1961); Fuentes v. United States, 283 F.2d 537 (9th Cir. 1960).

If it could be said that the extrajudicial statements made after the robbery were inadmissible against the non-declarant, the error, if any, would be harmless under Rule 52(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

Since the hearsay rule only excludes declarations and not acts, Firman's testimony that Forte produced a roll of money and forced Firman to pat his gun was admissible as the description of an act. Lutwak v. United States, 344 U.S. 604, 617, 73 S.Ct. 481, 97 L.Ed. 593 (1953). Not only did each appellant admit his participation in the robbery, but both appellants were identified as being at the scene of the crime. Hence we cannot say that the admission of their declarations against the non-declarant had substantial influence in bringing about the verdict. See Krulewitch v. United States, supra, 336 U.S. at 444, 445, 69 S.Ct. at 718–719, 93 L.Ed. 790; Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

It will be noticed that the Court in admitting certain testimony limited some of it only against appellant Forte on all counts; some was admitted against Forte on all counts and against appellant Atkins only on the conspiracy count; some was admitted against Atkins on all counts and against Forte only on the conspiracy count; and some against both appellants on all counts. Notwithstanding the trial judge's admonition to the jury when this testimony was received as evidence and the use of proper limiting instructions in his charge, appellants contend that the instructions given to the jury were not sufficiently clear so that it was reasonably possible for the jury to follow them. We do not agree. The instructions clearly presented the law applicable to the facts of this case. We also note that appellants did not object to any of the instructions given.

Appellant Forte, in support of his claim that the evidence was insufficient to sustain the conviction against him, challenges the credibility of George Engebretsen who identified Forte at the trial as being at the scene of the crime, on the ground that he was sixty-seven, nearsighted, and couldn't recognize Forte from pictures shown him by the F.B.I. The credibility of witnesses is for the jury and not appellate courts.

Viewing the record as a whole we are convinced that the alleged errors are without merit, and that the evidence is clearly sufficient to sustain the convictions of the appellants on all counts.

Affirmed.