254

UNITED STATES of America,
Plaintiff-Appellee,

v.

James ALLEGRETTI, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

David FALZONE, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank LISCIANDRELLO, Defendant-
Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Louis DARLAK, Defendant-Appellant.

Nos. 13915–13918.

United States Court of Appeals
Seventh Circuit.

Dec. 22, 1964.

Rehearing Denied Jan. 21, 1965
en Banc.

Maurice J. Walsh, Anna R. Lavin, Daniel C. Ahern, Julius Lucius Echeles, Frank W. Oliver, Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and DUFFY, SCHNACKENBERG, KNOCH, CASTLE, KILEY and SWYGERT, Circuit Judges, en banc.

KNOCH, Circuit Judge.

This matter came before the Court for reconsideration of its opinion previously rendered on April 22, 1964, 340 F.2d 243, in which the nature of these proceedings is sufficiently set out to make repetition here unnecessary.

We have enjoyed the benefit of oral argument on such re-consideration together with the record and the briefs of counsel.

On reconsideration, this Court adopts the majority opinion handed down April 22, 1964, insofar as that opinion concluded that the evidence was sufficient to convict all the defendants herein on both counts of the indictment of (1) conspiracy to possess whiskey stolen from interstate commerce knowing such whiskey was stolen from interstate commerce, and (2) as to each defendant, of

knowingly possessing the stolen whiskey.[1]

The trial was a long one. The conspiracy disclosed by the evidence was complicated. There was ample proof that the whiskey in question was stolen from an interstate shipment and abundant circumstantial evidence from which the jury could have concluded that each defendant must have known that the whiskey was stolen. The record shows that all of the defendants contributed to carrying out the object of the common conspiracy to possess the stolen whiskey. We deem it unnecessary to narrate the details of their activities. The record discloses that each engaged in one or more of such acts as storing the whiskey, directing or carrying out its distribution to various cafes, operating those cafes, stowing the whiskey there, and, in some cases, transferring it to other containers, raising funds to enable the conspiracy to continue after government agents had arrested one of the conspirators and after raids on some of the cafes involved, or making false exculpatory statements to the government agents.

There were sharp conflicts in the testimony and in numerous instances the jury would have to resolve issues of credibility. Viewed in the light most favorable to the government, the evidence supports the convictions. Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680.

■ We do not adopt the majority opinion of April 22, 1964, with respect to the comments made by the Trial Judge in connection with his ruling on the admissibility of acts and statements of certain defendants in evidence against other defendants. It was on the basis of those comments that the majority, in the opinion of April 22, 1964, based its reversal of the convictions here appealed. We adopt instead the dissenting opinion to the effect that the statements of the

Trial Judge did not constitute reversible error. 340 F.2d 243, beginning at page 248.

■ The defendants contend that statements made by alleged co-conspirator defendant David Falzone after his arrest were improperly admitted in evidence against other defendants. Their theory is that with the arrest of David Falzone, and the raids made the same day on some of the cafes where the stolen whiskey was stored, the conspiracy to possess liquor stolen from interstate commerce had come to rest. The evidence in the record supports a contrary holding that David Falzone's arrest did not terminate the conspiracy. Gerald Covelli testified to seeing some of the stolen whiskey in the possession of fellow conspirators two weeks after the earlier raids on some of the cafes. Even while in the custody of the Federal Bureau of Investigation, David Falzone was still issuing instructions for disposition of a part of the stolen liquor. Max Olshon testified that when released on bond, David Falzone stated that he was not unduly worried because Jimmy Allegretti would "straighten out the whole case." Gerald Covelli testified that he and David Falzone then engaged in efforts to raise the money requested by James Allegretti for that purpose. There was evidence that David Falzone continued to participate in the conspiracy. United States v. Agueci, 2 Cir., 1962, 310 F.2d 817, 839, and cases there cited. It was not necessary for the government to prove what, if anything, James Allegretti actually did to "straighten out the case," and continue the conspiracy. There was evidence that he asked for money and that, after David Falzone's arrest and release on bond, Falzone and Gerald Covelli did raise such sums which were turned over to James Allegretti to be used for that purpose.

■ David Falzone testified that he had seen Agent Weatherwax casually at

1. In the opinion of April 22, 1964, 340 F.2d 243, at page 247, the Court stated: "In addition to the matters which we have already discussed, we deem it appropriate to state that there is sufficient evidence in the record to support the verdict as to each of the defendants. We reject defendants' contention to the contrary."

a motel in April, 1962, had started a conversation with him, and that Agent Weatherwax, on hearing that Falzone proposed to testify at the trial, had said, "Don't be a fool, we will murder you on that stand." On cross-examination, the government attempted in vain to elicit certain testimony of further conversation with Agent Weatherwax respecting David Falzone's reasons for testifying as he did. Under the circumstances, it was proper rebuttal for Agent Weatherwax to testify to those further conversations and to incriminating admissions made by David Falzone in the course of such conversations.

We have scrutinized all the other examples of such evidence, the admission of which is characterized by appellants as reversible error, and must conclude that the position of the defense on this point is not well founded.

█ It is contended that post conspiracy declarations of one co-defendant, although admitted as to him alone (a matter on which the jury was instructed) were elicited with intent to prejudice the other defendants. Some of these declarations were made in the course of conversation between David Falzone, Gerald Covelli, and various government agents, including William D. Weatherwax, in the U. S. Attorney's office. During cross-examination of Gerald Covelli reference was made to contradictions between his prior statements and his trial testimony. Gerald Covelli was explaining this on re-direct, pointing out that he had been corrected by David Falzone as to certain dates and places in the course of the above conversation. The corrections and attendant comments made by David Falzone, and described by Gerald Covelli, were incriminatory admissions of David Falzone and were clearly admitted only as evidence against Falzone. These admissions were corroborated by the testimony of a government agent present at the time who was properly permitted to testify to that effect and to the attendant circumstances, including the questions and comments in answer to which the incriminatory admissions were made.

The testimony of Gerald Covelli was a vital part of the government's case. The defense witness Robert Westerhausen testified that while he and Covelli were prison-mates at Leavenworth, Covelli told him in the course of many conversations that he was being paid to implicate his co-defendants, who in fact had nothing to do with the stolen liquor, in order to shield the real culprits.

█ The cross-examination of Mr. Westerhausen brought out the details of his prior long history of mental incapacity, although he had since been judicially determined as restored to sanity. On redirect, Mr. Westerhausen testified to the nature and extent of his prior mental disease and its cure beginning in 1955 with the result, he stated, that his memory began to improve. On re-cross, Mr. Westerhausen said again that his memory had begun to improve about 1955. The government counsel then asked whether Mr. Westerhausen now recalled killing his stepmother. The Trial Judge sustained objections to this and instructed the jury:

> "The jury is instructed and admonished by the Court to pay no attention whatever to the last improper question by the Government."

It is contended that this admonition was insufficient and that a motion for mistrial should have been allowed. Although adjudged restored to sanity, the witness's interest, possible prejudices and accuracy of memory, and factors affecting these, were all proper subjects of cross-examination. The government was entitled to elicit pertinent circumstances affecting his credibility. United States v. Lawinski, 7 Cir., 1952, 195 F.2d 1, 7. As the government argues, Mr. Westerhausen's mental history was extremely complex, United States v. Westerhausen, 7 Cir., 1960, 283 F.2d 844, 848, including not only loss of memory, but auditory hallucinations. After carefully weighing the matter, we do not agree that this one question, which the Trial Judge held to

be improper, and on which the jury were promptly instructed, required a mistrial. Similarly, we find no reversible error in the failure of the prosecution to follow up with affirmative proof its questions to which Mr. Westerhausen gave negative answers.

■ In several instances, the Trial Judge ordered parts of the testimony stricken although the defendants had moved not to strike but to declare a mistrial. A typical instance was Gerald Covelli's statement that there was a price on his head. The Trial Judge ordered the statement stricken and instructed the jury to disregard it. Gerald Covelli had been asked on cross-examination about having studied Spanish and Italian in Leavenworth and had denied that he proposed to go to Rio de Janeiro to take "off a diamond score." It was proper on redirect to cover the same subject matter. On redirect, Covelli said he was studying those languages because he proposed ultimately to leave the country and live elsewhere. He then added, not responsively, "I could never live peacefully in this country, because there is a price on my head now." Later Robert Westerhausen testified that Gerald Covelli had admitted to him that he intended to go to Brazil to steal diamonds and that he was studying Spanish for that purpose. We do not consider this, or the other similar actions by the Trial Judge, as bases for reversal

It is further contended that the defendants were denied their rights under 18 U.S.C. § 3500 (Jencks Act) with respect to the witness Max Olshon. It is apparent from our own close study in camera of the documents in question, which included both direct statements of witnesses and reports of government agents, which the Trial Judge examined in camera, that he did not, as feared by defense counsel, limit the word "statements" as used in the statute to mean only such statements as the witness had himself set down on paper. We find no error in this regard.

■ Max Olshon testified to a conversation with David Falzone on March 18, 1959. The prior statement of Max Olshon which was produced did not refer to this conversation. Objection was sustained to the question whether he had told the Grand Jury about it. The Trial Court denied a motion for production of the Grand Jury transcript of his testimony to ascertain whether he had or had not mentioned this conversation. No such particularized need was shown for such production as to outweigh the traditional maintenance of secrecy surrounding grand jury proceedings. It was not error to deny the motion. United States v. Magin, 7 Cir., 1960, 280 F.2d 74, 79; United States v. Nasser, 7 Cir., 1962, 301 F.2d 243, 245, and cases there cited.

■ We have given particularly close consideration to the assertion that cross-examination of government witnesses was unduly limited to the prejudice of the defendants. In every such instance cited by the defendants, the Trial Judge sustained objections to the questions as beyond the scope of the direct examination. The defendants concede the traditionally wide latitude given to a trial judge in controlling cross-examination, but argue that the principle has here been expanded to keep relevant facts from the jury concerning possible collaboration between Lou Fushanis, one of his employees, and Gerald Covelli, sought to be introduced by way of cross-examination. Our study of the matter leads us to the opposite view that the Trial Judge did not abuse his authority in this respect. One of the explanations given for the effort to introduce the evidence sought to be elicited by way of cross-examination is that the defense could hardly be expected to call Gerald Covelli as its witness. The difficulties inherent in trial tactics cannot be permitted to dilute the authority of a Trial Judge to control the trial. We find no error here.

■ Contrary to defendants' contention, the Trial Judge did instruct the

jury that to find defendants guilty they must find them to have known that the merchandise involved was stolen from interstate commerce. It was not necessary to give repetitious instructions tendered by the defense.

The Trial Court also instructed the jury regarding the definition of an accomplice and the caution to be exercised in weighing his evidence. Whether Lou Fushanis was or was not an accomplice or co-conspirator was an issue of fact which was presented to the jury by a conflict in the evidence. It was not error for the District Judge to refuse to underline the testimony of one of the witnesses and his inferences respecting this issue. If the jury concluded Lou Fushanis was an accomplice, then they had been told how to treat his testimony, and they had adequate instructions in interpreting that testimony with respect to the basic issues of the innocence or guilt of the defendants.

We have reviewed all other points raised by the defendants. After due consideration, we find that none operates to alter our conviction that the judgment of the District Court must be affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge (partly concurring and partly dissenting).

I approve and concur in Judge KNOCH's opinion insofar as it is not inconsistent with the majority opinion of this court filed on April 22, 1964, 340 F.2d 243.

The comment of a judge who concurred is pertinent:

"* * * And the court's statement that it was satisfied that a connection existed between the acts of the several defendants invited a substitution of the 'feeling of collective culpability for a finding of individual guilt.'"

I would reverse the district court in this case and remand it for a new trial.