360 A.2d 167
**COMMONWEALTH of Pennsylvania**
v.
**Albert Edward PASS, Appellant.**

Supreme Court of Pennsylvania.

Argued March 10, 1975.

Decided Jan. 29, 1976.

Rehearing Denied Aug. 4, 1976.

38

Harold Gondelman, Pittsburgh, for appellant.

Richard A. Sprague, Berger & Berger, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Albert Edward Pass, was tried by a judge and jury and found guilty of three counts of murder in the first degree. Post-trial motions were denied and appellant was sentenced to three consecutive life sentences. This appeal followed.

On December 29, 1969, Joseph Yablonski and his wife and daughter were shot to death at their home in Clarksville, Pennsylvania. Police investigation led to the arrest and subsequent conviction of appellant for his participation in these homicides. Prior to appellant's trial, this court granted appellant's motion for a change of venue from Washington County to Erie County. He was thereafter convicted of the homicides and now brings this appeal.

Appellant first argues that the Pennsylvania courts lacked proper jurisdiction over appellant thereby making

his conviction null and void. On May 2, 1972, appellant was indicted by a federal grand jury in the Western District of Pennsylvania. The federal indictments were a result of his alleged participation in the conspiracy to murder the Yablonski family. On May 5, 1972, appellant, represented by counsel, waived his right to contest the removal of his case to Pennsylvania, and on May 9, 1972, appellant was taken to Pittsburgh, Pennsylvania, as a federal prisoner. He was thereafter indicted by the federal government for the violation of Joseph Yablonski's civil rights. In Pittsburgh, appellant was arrested by state authorities for the murder of the Yablonski family and was subsequently convicted of the homicides.

Appellant argues that the federal indictments which brought him to Pennsylvania were a subterfuge and, therefore, his state convictions must fail because he was brought to Pennsylvania illegally. We do not agree. Appellant, with the advice of counsel, chose to voluntarily come to Pennsylvania. Moreover, the manner in which appellant was brought into Pennsylvania by federal authorities would not affect the jurisdiction of the Pennsylvania court in this case. Appellant was neither forcibly brought into Pennsylvania nor was he kidnapped by state or federal authorities for the purpose of bringing him to Pennsylvania. See *Lujan v. Genzler*, 2 Cir., 510 F.2d 62 (1975); Cf. *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974).

Appellant next argues that the keyman grand jury selection process in Washington County is, as a matter of law, a denial of due process and equal protection of the law and, therefore, the indictment must be quashed. We do not agree.

In *Commonwealth v. Martin*, 465 Pa. 134, 348 A.2d 391 (1975), this court, in upholding the Washington County keyman petit jury selection system, made clear that the system was not unconstitutional per se, but that

only upon a showing that the jury commissioners and keymen were aware of irrelevant criteria such as age, race and political party, coupled with a sufficient evidentiary record that such information afforded a basis for selection or nonselection of jurors, would a court invalidate the jury selection system.

The United States Supreme Court has likewise refused to declare a per se violation of either the due process clause or the equal protection clause in a jury selection system which allows for subjective discretion absent an evidentiary showing that such discretion was exercised or so permeated the selection system so that political, racial, age or religious criteria were used. See *Carter v. Jury Commission*, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970); *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). Compare *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), and *Avery v. Georgia*, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1953).

The record in the instant case does not establish a per se violation of either the due process clause or the equal protection clause of the United States Constitution.[1]

Appellant also argues that his indictment should be quashed because it was based upon hearsay testimony. We do not agree. The indictment was based upon the reading to the grand jury of a confession of a co-conspirator of appellant, who named appellant as a participant in the conspiracy. While this was hearsay, it was sufficient to support the indictment. See *Commonwealth v. Dessus*, 423 Pa. 177, 224 A.2d 188 (1966).

Appellant next argues that the Court of Common Pleas of Erie County erred in refusing his change of

---

1. The standards applicable to petit and grand juries are the same. See *Commonwealth v. Martin, supra*, at n. 7.

venue motion.[2] Appellant contends that because his co-defendant Prater was tried before appellant in Erie County and Prater named appellant as a co-conspirator in the homicides, he was unable to receive a fair trial because of publicity surrounding his co-conspirator's trial and the naming of appellant as a participant in the homicides. We do not agree. The trial judge took testimony on this matter and found that while there had been mass media coverage of appellant's co-conspirator's trial, the accounts had been limited to factual accounts of the trial and contained no inflammatory material that would prejudice appellant's cause in Erie County. See *Commonwealth v. Hoss*, 445 Pa. 98, 283 A.2d 58 (1971). Moreover, appellant was tried some three months after his co-defendant Prater had been convicted.

█ Appellant next argues that the court erred in refusing to allow his counsel to inquire whether the prospective jurors had an opinion as to his guilt. We do not agree. The trial judge allowed a broad voir dire and allowed those questions that would reveal whether the prospective jurors had a fixed opinion as to appellant's guilt. This is the permissible line of questioning in a voir dire examination and was fully complied with in the instant case. See *Commonwealth v. Biebighauser*, 450 Pa. 336, 300 A.2d 70 (1973).

█ Appellant next argues that the trial court erred in allowing one George Smith, Jr., to testify. Prior to Smith's testimony, the prosecution had presented the testimony of Silous Huddleston, who stated that he and appellant had discussed the means that should be used to murder Yablonski and that appellant had ruled out dynamite. Huddleston then began telling about calling Smith and discussing the use of dynamite in the Yablonski murders. An objection was interposed and sustained.

2. On October 19, 1972, this court ordered appellant's trial be held in Erie County, rather than Washington County, as appellant's counsel requested.

Appellant takes the position that the objection was sustained because to speak of dynamite as a means to murder Yablonski was outside the scope of the conspiracy, since Huddleston testified that appellant had ruled out the use of dynamite. When Smith was called as a witness, the defense objected, stating that Smith could not testify as to the dynamite as a means of killing Yablonski, since appellant had ruled this out as a means of murder; this objection was overruled. We find no error in this regard. Smith's testimony was admissible to prove a conspiracy on the part of appellant to murder Yablonski, regardless of the means used, and it further tended to corroborate the testimony of the prior Commonwealth Witness, Huddleston. See *Commonwealth v. Ransom*, 446 Pa. 457, 288 A.2d 762 (1972).

Appellant next argues that the testimony of William J. Prater was irrelevant and prejudicial in that it related to events after the central aim of the conspiracy was accomplished. We do not agree.

In *United States v. Hickey*, 360 F.2d 127, 141 (7th Cir. 1966) *cert. denied*, 385 U.S. 928, 87 S.Ct. 284, 17 L.Ed.2d 210 (1966) the court, in interpreting the United States Supreme Court decision in *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957), stated:

"The duration of a conspiracy depends upon the facts of the particular case, that is, it depends upon the scope of the agreement entered into by its members. Generally, the conspiracy ends when its principal objective is accomplished because no agreement to retain secrecy after the achievement of the unlawful end can be shown or implied by mere 'acts of covering up.' Thus in *Gruenwald v. United States*, supra 353 U.S. at 402, 77 S.Ct. at 972, the Supreme Court stated, 'Acts of covering up, even though done in the context of a mutually understood need for secrecy, cannot themselves constitute proof that concealment of the crime after its commission was part of the initial

agreement among the conspirators.' But the fact that the 'central objective' of the conspiracy has been nominally attained does not preclude the continuance of the conspiracy. Where there is evidence that the conspirators originally agreed to take certain steps after the principal objective of the conspiracy was reached, or evidence from which such an agreement may reasonably be inferred, the conspiracy may be found to continue. *Atkins v. United States,* 307 F.2d 937, 940 (9th Cir. 1962); cf., *United States v. Allegretti,* 340 F.2d 254, 256 (7th Cir. 1964), *cert. denied,* 381 U.S. 911, 85 S.Ct. 1531, 14 L.Ed.2d 433 (1965). The cases cited by the defendants do not hold otherwise. The crucial factor is the necessity for some showing that the later activities were part of the original plan. In this case there was such a showing."

The testimony of Prater in the instant case reveals that part of the original conspiracy to murder Joseph Yablonski was to cover up any involvement by the United Mine Workers or officers of the United Mine Workers. Therefore, the testimony of Prater was relevant and admissible.

 Appellant next argues that the parts of Prater's testimony naming appellant as a defense witness at Prater's previous trial and Prater's later admission of perjury at that trial created a situation of forcing appellant to testify and, when coupled with appellant's subsequent exercise of his Fifth Amendment right not to testify, created an inference of guilt. We do not agree.

The record in the instant case reveals no comment by either the judge or prosecution upon appellant's exercise of his Fifth Amendment rights. See *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973).

Moreover, the court below instructed the jury as follows:

"Now, there is one more thing to be said to you in this regard, members of the jury, not in regard to ac-

complices, in regard to the failure of the defendant to take the stand. Any person accused of crime has a constitutional right not to testify. They have a right not to take the stand if they see fit to do so, and I want to impress upon you that the fact that a person has chosen to exercise that constitutional right does not give you the right to draw any unfair or adverse inference concerning that person. You must not do so.

"To put it specifically, Albert Pass chose not to testify in this case. That was his constitutional privilege, his constitutional right. The fact that he exercised that right does not give you the right to draw any inference that could be adverse to him in this case.

"Furthermore, members of the jury, you are not to discuss in your deliberations his failure to take the stand."

We are of the opinion the testimony of William J. Prater was admissible and in no way created an inference of guilt when coupled with appellant's exercise of his constitutional rights.

Appellant next argues that the court erred in allowing the prosecution to show that Yablonski had instituted numerous lawsuits to set aside the election of Tony Boyle, who had recently been elected president of the United Mine Workers. Appellant concedes that this could be relevant evidence of motive, but argues that he did not know of the lawsuits, so that it could not be a motive for the homicides. We do not agree. The lawsuits were a matter of public record, and since appellant was a high-ranking official in the United Mine Workers Union, he was knowledgeable in this area.

Appellant next argues that the court below erred in quashing a subpoena duces tecum for President Judge Charles Sweet of Washington County. Appellant sought to subpoena Judge Sweet and to compel him to produce the court records concerning co-defendants, An-

nette Gilly and Claude Vealey, Silous Huddleston, Paul Gilly and Aubran Wayne Martin. It is appellant's theory that the Washington County Court records would reveal a pattern of leniency and special treatment toward the above individuals and therefore that such records could be used to impeach the credibility of such witnesses. We do not agree.[3]

The scope of the subpoena duces tecum for Judge Sweet was for all court records dealing with co-defendants in the Yablonski murders. It first noted that pursuant to the Act of April 14, 1834, P.L. 333, § 23, 17 P.S. § 1483, the Clerk of Courts of Washington County is proper custodian of that County's judicial records, and not the President Judge, and therefore the subpoena for court records should have been addressed to the Clerk of Courts of Washington County. Secondly, the Clerk of Courts of Washington County did testify and did produce all the court records concerning Claude Vealey and Silous Huddleston, and appellant had ample opportunity to cross-examine the clerk to establish the existence of any judicial order granting privileges to Claude Vealey or Silous Huddleston. Further, both Vealey and Huddleston testified at appellant's trial and were subjected to cross-examination concerning any possible deals or favorable treatment accorded them.

Appellant also argues the court erred in quashing a subpoena for Mark Sullivan, a newspaper reporter for Time Magazine. Mr. Sullivan had written a story for Time Magazine concerning alleged deals and concessions made by the special prosecutor to Annette Gilly in return for her guilty plea and future testimony. Appellant contends Mr. Sullivan's testimony was necessary because the "sole issue" in the case against appellant was one of witness credibility. Annette Gilly did not testify

3. It must be noted that Annette Gilly, Paul Gilly and Aubran Wayne Martin did not testify at appellant's trial and therefore their credibility was not relevant to appellant's defense.

at appellant's trial and, therefore, her credibility could not be an issue. We therefore find no error in the quashing of the subpoena for Mark Sullivan.

Appellant next argues that the court erred in refusing to conduct a voir dire to determine the competency of William J. Prater to testify. The defense sought to have Prater declared incompetent to testify because of his admitted perjury. This perjury was based upon the fact that Prater had admitted that he lied before a judicial tribunal. We find no error in this denial. The witness had not been convicted of perjury and was, therefore, not incompetent to testify. See Act of May 23, 1887, P.L. 158, § 2(a); Act of April 27, 1909, P.L. 179, § 1, 19 P.S. § 682.

Appellant next argues that the court erred in refusing to compel the prosecution to call Paul Gilly as a witness or, in the alternative, for the court to call Gilly as its own witness. We do not agree. The prosecution is under no duty to call every witness that it lists on the bill of indictment if that witness's testimony would be cumulative. In the instant case, Paul Gilly was available for call by the defense and, therefore, we find no error in the actions of the court or prosecution.

Appellant next contends that the court below erred in not charging the jury that the failure to sentence Claude Vealey and Silous Huddleston *to* one to two years after their guilty pleas was unusual and that because of this unusual circumstance, the jury could reject their testimony because a deal had been made for the favorable testimony. We do not agree. Our review of the charge of the court below reveals a complete and explicit explanation dealing with credibility of witnesses, especially the motives and interests of certain witnesses concerning possible leniency in their own cases. The trial judge also specifically reviewed the testimony of Joseph Moyer, Washington County Clerk of Courts, to the effect

50

that in his experience the postponing of sentencing in both the Vealey and Huddleston cases was unusual.

Appellant raises other allegations of error which we need not discuss because of his failure to note a proper exception. *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

Judgments of sentence affirmed.

ROBERTS, NIX and MANDERINO, JJ., concur in the result.