333 A.2d 745

COMMONWEALTH of Pennsylvania, Appellee,

v.

Melvin FIELDS, Appellant.

Supreme Court of Pennsylvania.

Argued Nov. 15, 1974.

Decided March 18, 1975.

Louis Samuel Fine, Fine, Staud, Grossman & Garfinkle, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., James J. Wilson, Asst. Dist. Atty., Abraham J. Gafni, Deputy Dist. Atty. For Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

In a nonjury trial, Melvin Fields was convicted of murder in the second degree and conspiracy. Motions for a new trial and in arrest of judgment were denied, and a prison sentence was imposed on the murder conviction.[1] This appeal was then filed.

The only issue posed by the appeal is whether or not the evidence at trial was sufficient to sustain the murder conviction. We conclude it was not.

As we have said many times previously, " '[T]he test of the sufficiency of the evidence . . . is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted.' " *Commonwealth v. Smith*, 447 Pa. 457, 463, 291 A.2d 103, 105 (1972).

The instant prosecution stemmed from the fatal shooting of Herman Press. The Commonwealth's case against the appellant, Fields, was presented in this manner.

The first witness was Johnnie May Gale, who testified that on September 25, 1972, about 10:30 p. m., she and Press were seated on the doorstep in front of her residence on West Dauphin Street in Philadelphia, when "two boys" whom she did not know and could not identify "came around the corner and said to Herman [Press] are you from 29?" When asked what happened then, Miss Gale responded, "They shot him" and then fled. Then in answer to the question, "How many people shot him, one or two?", the witness replied "One".

---

1. Sentence was suspended on the conspiracy conviction.

The next witness was Alan Presbury, who testified that while he was in the kitchen of his residence which was "around the corner" on 31st Street from Miss Gale's residence, he heard "some shots"; that he ran to the front door and "saw three men running past the door"; that he recognized one as Fields and another as Leroy Gause, both of whom he knew before; and that as the three ran he saw Fields move his hands "down into his pants . . . . Like he had something under his shirt." When asked if he saw any weapons, the witness said, "No, I didn't."

The third and final witness for the Commonwealth was a police detective who testified that he went to a hospital shortly after the shooting; that Press was in the emergency room and in response to questions said he was seated on the steps with his girl friend when "Boonie [Leroy Gause] and Melvin Fields came up and asked if I was from 29. He didn't give me a chance to answer. He just shot about five times." When asked who shot him, Press said "Boonie".[2]

The report of the medical examiner was then made part of the record by stipulation. It evidenced that Press had been wounded five times from gunshots; that one such wound, from which a .22 caliber bullet was recovered, demonstrated the bullet penetrated the liver, right renal artery and inferior vena cava.

While the Commonwealth concedes Gause did the shooting, it has and still urges that Fields aided and abetted therein. Of course, if this were so, Fields would be criminally responsible the same as Gause, the principal felon.[3]

To "aid or abet" in the commission of a crime one must be an active partner in the intent to commit it.

2. This evidence was admitted as a dying declaration without objection.

3. See Act of June 24, 1939, P.L. 872, § 1105, as amended, 18 P.S. § 5105 (repealed 1972), which was extant on the date of the crime.

Commonwealth v. McFadden, 448 Pa. 146, 292 A.2d 358 (1972), and Commonwealth v. Strantz, 328 Pa. 33, 195 A. 75 (1937). While this may be established by circumstantial evidence, the proof must lead to more than suspicion and conjecture. See Commonwealth v. McFadden, supra. Furthermore, mere presence at the scene of a crime is not in itself, sufficient to establish that one is an active partner in the intent of another to commit the crime. Cf. Commonwealth v. Leach, 455 Pa. 448, 317 A. 2d 293 (1974), and Commonwealth v. Pierce, 437 Pa. 266, 263 A.2d 350 (1970). Likewise, flight from the scene of a crime, without more, is not enough to show one is such an active partner. Cf. Commonwealth v. Roscioli, 454 Pa. 59, 309 A.2d 396 (1973); and, Commonwealth v. Bailey, 448 Pa. 224, 292 A.2d 345 (1972).

■ In our view, the Commonwealth's evidence was inadequate, as a matter of law, to establish beyond a reasonable doubt that Fields was an active partner in Gause's intent to shoot Press. Read in the light most favorable to the Commonwealth, the record proves that Fields arrived at the scene of the shooting with "Boonie", the killer; that he *may* have asked Press if he "was from 29"; [4] that after "Boonie" shot Press, Fields ran from the scene with "Boonie". There is nothing in the testimony to indicate Fields had any prior knowledge of Gause's lethal intent or that he in any way counseled or participated in the shooting. Under the circumstances, the proof left too much to conjecture.

Judgment reversed, and Fields is ordered discharged.

JONES, C. J., and NIX, J., dissent.

---

4. It is not clear from the testimony if Fields was the one who asked the question.