419 A.2d 564

COMMONWEALTH of Pennsylvania

v.

**Barbara Jean COWHER, Appellant.**

COMMONWEALTH of Pennsylvania

v.

**Donald Ray MARSHALL, Appellant.**

Superior Court of Pennsylvania.

Submitted March 20, 1979.

Filed March 28, 1980.

David K. Boyer, Assistant Public Defender, Williamsport, for appellant at No. 1714.

Gregory V. Smith, Chief Public Defender, Williamsport, for appellant at No. 1701.

William S. Kieser, District Attorney, Williamsport, for Commonwealth, appellee.

Before PRICE, SPAETH and LIPEZ, JJ.

LIPEZ, Judge:

The appellants, Barbara Jean Cowher and Donald Marshall, were tried jointly by a judge sitting without a jury. Both were found guilty of criminal trespass, 18 Pa.C.S. § 3503(a), and criminal conspiracy, 18 Pa.C.S. § 903(a). Post–verdict motions were denied, and sentences imposed. We have combined appellants' separate appeals for purposes of this opinion, and new reverse all judgments of sentence and discharge appellants.

The sole contention by each appellant is that the evidence was insufficient to support the verdicts of guilty of criminal trespass and conspiracy to commit criminal trespass. Viewed in the light most favorable to the Commonwealth as verdict winner, the trial evidence established the following facts as stated in the opinion of the court below:

"On July 27, 1977, at 11:00 P.M. Mr. James Sanders observed a Plymouth Station Wagon traveling up and down a 'no outlet' gravel road at a slow pace several times. The road was a township route and was located in a country area. Several homes or farms were located at varying distances along the road. The third time the

vehicle made a pass, its operator turned around in the Sanders driveway. Mr. Thomas Garber was with Mr. Sanders at the time. The two men's suspicions were aroused and they decided to investigate. They followed the station wagon at a distance in a car owned by Mr. Sanders. As they reached the next farm, owned by Mr. Lee Heim, a man (defendant Marshall by his admission) was observed in the yard between the house and a shed. When Garber and Sanders stopped, the man ran. Garber and Sanders took chase and the man disappeared into the woods behind the house.

"Meanwhile the slow—moving station wagon had turned around at the foot of the road and proceeded back up the dead—end road passing the Garber vehicle. Mr. Garber stopped the car and identified defendant Barbara Cowher as the driver of the vehicle. When asked what she was doing, Ms. Cowher replied she was 'just out for a drive.' She then turned and proceeded back down the road as the two men followed her at a distance. She turned around and came back past the two men. The men decided to inform John Bower (who lived near the intersections of this dead—end road on the main highway) of their observations as Mr. Bower was the nephew of the owner of the farm (Lee Heim) and served as overseer of the Heim residence. Mr. Bower accompanied the two men to the intersection of the roads and blocked Ms. Cowher as she was about to exit onto the highway. They told Ms. Cowher she'd have to wait there while the police were called. Within twenty minutes defendant Marshall appeared walking along the main road. Mr. Sanders recognized the man as the one he had observed in the Heim yard. Advised he would have to wait for the police, Mr. Marshall promptly entered the car occupied by Barbara Cowher and conversed and had a cigarette with her, demonstrating that he knew Ms. Cowher.

"Mr. John Bower, the nephew of Mr. Heim, testified that on July 26, 1977 at around noon some things had been moved in the Heim household. He set 'traps' to see if

anyone was entering the premises without permission. He corroborated the testimony that Sanders and Garber had come to his home the evening of July 27, and they had proceed to stop Ms. Cowher and then Mr. Marshall. The police were called and Mr. Bower opened the Heim residence only to discover that it had been ransacked. Defendant Marshall later admitted to the police that he had been the man in the Heim yard who had fled. His explanation for being there was that he had come to 'visit Ray.' Ray may have referred to the brother of Lee Heim, the owner. Ray was described as 'weakminded'. No one had lived in the residence since January, 1977 when Lee Heim was hospitalized."

Appellants were convicted of criminal trespass under 18 Pa.C.S. § 3503(a)(1),[1] which provides:

"A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or gains entrance by subterfuge or surreptitiously remains in any building or unoccupied structure, or separately secured or occupied portion thereof."

The trial evidence, even when we give the Commonwealth the benefit of all favorable facts and inferences as we must, establishes only that someone had entered the Heim residence and ransacked it during the 35–hour period before appellants were apprehended nearby. It is true that the behavior and answers of both appellants might provide grounds for strong suspicion [2] that Marshall was the one who had ransacked the house, and Cowher was waiting in the car to help him get away. But the house could have been ransacked at any time during the day and a half before appellants were found outside, and there was no evidence, such as fingerprints inside the house or possession of proper-

---

1. The amended version of 18 Pa.C.S. § 3503(a)(1) (Supp.1979–80), effective August 22, 1978, is inapplicable to the events in this case, which occurred more than a year earlier.

2. While the crime may be established by circumstantial evidence, the proof must lead to more than mere suspicion and conjecture. *Commonwealth v. Fields,* 460 Pa. 316, 333 A.2d 745 (1975).

ty which had been inside, which linked either appellant to any entry of the house at all.[3.]

█ Clearly the evidence fell far short of supporting a finding beyond a reasonable doubt that there had been an actual entry by either appellant, and therefore neither conviction for criminal trespass can stand. The sufficiency of the evidence to show criminal conspiracy is a closer question, since an actual entry need not be shown. However, the fact that appellants had no apparent legitimate purpose in being near a house which someone had entered illegitimately within the previous day and a half would, in our view, be too conjectural a basis to support an inference beyond a reasonable doubt that there was an agreement between appellants to commit an unprivileged, unlicensed entry of the house. *See Commonwealth v. Adams*, 254 Pa.Super. 62, 385 A.2d 525 (1978).

Judgments of sentence reversed, and appellants discharged.

█

**3.** Neither mere presence at the scene of a crime, nor flight, without more, is sufficient. *Commonwealth v. Fields, supra; Commonwealth v. Keller*, 249 Pa.Super. 384, 378 A.2d 347 (1977).