## Commonwealth v. Gross

260

C.P. of Monroe County, no. 45 CR 2010.

*David Christine, district attorney,* for Commonwealth.

*George W. Westervelt Jr.* and *Eric R. Breslin,* for defendant.

SIBUM, *J.,* July 15, 2010—Defendant has been charged with criminal conspiracy and accomplice liability for providing a firearm to Daniel Autenrieth. On June 7, 2009, Autenrieth utilized the weapon to injure Trooper Robert Lombardo and kill Trooper Joshua Miller of the Pennsylvania State Police. Defendant has filed an omnibus pretrial motion seeking a bill of particulars and pretrial discovery. Defendant's motion also includes a request to dismiss or, in the alternative, transfer this case for improper venue and to avoid prejudicial pretrial publicity. Finally, defendant's omnibus motion requests a recusal of all judges of the Monroe County Court of Common Pleas or the appointment of an out-of-county judge to hear this matter. We held a hearing on defendant's motion on May 24, 2010 and granted the parties 30 days to brief their respective positions. The Com-

monwealth and defendant have filed briefs, and we are now prepared to render our decision. We will begin with a review of the salient facts.

Defendant met Autenrieth in 2005 or 2006. Their relationship became romantic in early 2009. On May 4, 2009, Autenrieth's estranged wife, Susan Autenrieth, filed a petition for a protection from abuse order against Autenrieth in the Northampton County Court of Common Pleas. Both Autenrieth and his estranged wife resided in Northampton County. On that same day, the Northampton County Court of Common Pleas issued a temporary PFA against Autenrieth naming his wife and their three children as protected parties. The temporary PFA prohibited Autenrieth from having any contact with the protected parties and evicted him from the residence in which Wife was residing. The May 4 temporary PFA did not prohibit Autenrieth from possessing firearms, nor did Wife request that he be prohibited from possessing firearms in her petition for a PFA.

At approximately 4 p.m. on May 4, 2009, three members of the Northampton County Sheriff's Office went to Autenrieth's home in order to serve the temporary PFA on Autenrieth and to effectuate the transfer of custody of the parties' children to Wife. When the sherriff's deputies arrived at Autenrieth's residence, defendant was at the home baby-sitting two of Autenrieth's children. Autenrieth was not present. Deputy Otto of the Northampton County Sheriff's office served the temporary PFA upon defendant as the adult in charge of Autenrieth's residence and advised her that the document was a PFA that prohibited Autenrieth from having contact with his wife and excluded him from wife's residence.

Deputy Otto also told defendant—albeit incorrectly—that the temporary PFA prohibited Autenrieth from possessing or owning a weapon. Custody of the children was then transferred to Wife.

On May 18, 2009, the Northampton Court of Common Pleas entered a final PFA in favor of Wife and against Autenrieth. The final PFA prohibited Autenrieth, inter alia, from possessing firearms. The final PFA was not served upon defendant.

On May 29, 2009 at approximately 4:30 p.m., defendant obtained a Pennsylvania driver's license using Autenrieth's address. Defendant resided in New Jersey with her family, but routinely stayed overnight at Autenrieth's residence. She obtained the license at a driver licensing center near Autenrieth's home. Defendant also changed her vehicle insurance to Pennsylvania using Autenrieth's address, but continued to receive mail at her family's residence in New Jersey.

Later in the evening on May 29, 2009, defendant and Autenrieth traveled from Autenrieth's apartment to the Cabela's store in Hamburg, Berks County, Pennsylvania. While at Cabela's and in the presence of Autenrieth, defendant purchased a 9 millimeter Taurus handgun. Defendant utilized her Pennsylvania driver's license to obtain the firearm. Defendant and Autenrieth then returned home to Autenrieth's residence where Autenrieth instructed defendant on the use of the gun. After doing so, defendant and Autenrieth put the gun into the box in which it came and placed it on a shelf above the washer and dryer in Autenrieth's house. That was the last time defendant ever saw the gun. Although defendant never saw or utilized the gun again, she was aware that Auten-

rieth had used it. He had fired it while with a friend and thereafter purchased another box of ammunition to replace the ammunition he had used.

On June 7, 2009, the Nazareth Borough Police responded to the report of a domestic disturbance involving a firearm at the home of Autenrieth's estranged wife. Autenrieth's wife advised the Nazareth Borough Police that Autenrieth threatened her with a handgun and then fled with the parties' 9-year-old son prior to police arriving. Nazareth Police attempted to stop Autenrieth's vehicle while in the Borough of Nazareth, however, Autenrieth refused to pull his vehicle over and began to flee from police at a high rate of speed.

Autenrieth continued to lead police from several municipalities on a 40-mile pursuit traveling over State Route 191 from Northampton County into Monroe County. When Autenrieth entered Monroe County, members of the Pennsylvania State Police, Swiftwater Barracks, joined in the pursuit. The pursuit ended on SR 611 North past SR 423 in Monroe County.

Upon ending the pursuit, two members of the Pennsylvania State Police, Trooper Joshua Miller and Trooper Robert Lombardo, approached the driver's side of Autenrieth's vehicle. Both troopers began ordering Autenrieth out of the vehicle but Autenrieth refused. The troopers broke open Autenrieth's driver side window, at which point Autenrieth produced the 9 mm Taurus handgun that defendant had purchased. Autenrieth fired three times at both Trooper Miller and Trooper Lombardo. Trooper Miller was struck in the right leg and base of his neck. Trooper Lombardo was struck in the left shoul-

der. Both troopers returned fire striking Autenrieth eight times. Trooper Miller and Autenrieth died as a result of their injuries. Trooper Lombardo recovered.

The criminal information filed in the Court of Common Pleas by the Commonwealth charges the defendant with criminal conspiracy (18 Pa.C.S. §903); firearms not to be carried without license (co-conspirator) (18 Pa.C.S. §6106(a)(1)); possession of firearm prohibited (accomplice) (18 Pa.C.S. §6105(a)(1)); and loans on, or lending, giving of firearms prohibited (accomplice) (18 Pa.C.S. §6115(a)).[1] The Commonwealth contends that defendant provided Autenrieth with the Taurus handgun despite knowing that Autenrieth was not licensed to carry a firearm and was not permitted to possess a firearm as a result of the protection from abuse order that had been entered against him.

## DISCUSSION

In her omnibus motion, defendant requests that the charges filed against her in Monroe County be dismissed, or in the alternative, transferred to Northampton County

---

1. The criminal complaint filed against defendant on October 15, 2009 with Magisterial District Justice Anthony Fluegel charged defendant of the following crimes: (1) criminal conspiracy (18 Pa.C.S. §903(a)(1)) to commit firearms not to be carried without license (18 Pa.C.S. §6106(a)(1)); (2) criminal conspiracy (18 Pa.C.S. §903(a)(2)) to commit firearms not to be carried without license (18 Pa.C.S. §6106(a)(1)); (3) criminal conspiracy (18 Pa.C.S. §903(a)(1)) to commit persons not to possess, use, manufacture, control, sell or transfer firearms (18 Pa.C.S. §6105(a)(1)); (4) criminal conspiracy (18 Pa.C.S. §903(a)(2)) to commit persons not to possess, use, manufacture, control, sell or transfer firearms (18 Pa.C.S. §6105(a)(1)); and (5) loans on, or lending, or giving firearms prohibited (18 Pa.C.S. §6115(a)).

for improper venue. Defendant asserts that no agreement or overt act was committed in Monroe County in connection with the conspiracy charges, nor is it alleged that the firearm was lent or given to Autenrieth in Monroe County. Defendant further asserts that venue is only proper where overt acts occurred in furtherance of—not subsequent to—Autenrieth's possession of a firearm. As such, defendant argues that Monroe County has no jurisdiction to hear this case. Instead, defendant contends that venue is proper only in Northampton or Berks County. The Commonwealth, in opposition to defendant's motion, asserts that defendant has been charged as an accomplice and co-conspirator to Autenrieth's possession of a firearm and for loaning a firearm to Autenrieth. Because these are possessory charges and Autenrieth was in possession of the handgun in Monroe County, the Commonwealth contends that jurisdiction of these charges may occur in this county.

Before addressing the substantive issues of defendant's motion, we feel compelled to address the distinction between the terms jurisdiction and venue. We note that courts of this Commonwealth and attorneys frequently utilize the terms jurisdiction and venue interchangeably and that confusion remains regarding the two concepts. The Pennsylvania Supreme Court has expressly held that all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code. 42 Pa.C.S. §931; *Commonwealth v. Bethea,* 574 Pa. 100, 113, 828 A.2d 1066, 1074 (2003). "Subject matter jurisdiction relates to the competency of a court to hear and decide the type of controversy presented." *Id.* citing *McGinley v. Scott,* 401 Pa. 310, 164 A.2d 424 (1960). Venue, on the other hand, "relates to the right of a party

to have the controversy brought and heard in a particular judicial district." *Id.* The Supreme Court has further clarified this distinction as follows:

"Subject matter jurisdiction and venue are distinct. However, since jurisdiction references the power of a court to entertain and adjudicate a matter while venue pertains to the locality most convenient to the proper disposition of a matter, venue can only be proper where jurisdiction already exists. . . . The terms are often used interchangeably because they must exist simultaneously in order for a court to properly exercise its power to resolve a particular controversy." *Id.* at 113-14, 828 A.2d at 1074-75.

Having clarified the distinction between jurisdiction and venue, we will now address the substantive merits of defendant's omnibus pretrial motion. Because we find defendant's motion to dismiss for improper venue dispositive of this case, we will begin with that issue.

Our Supreme Court has established that "the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of trial, or unless, by some statute, it need not. . . ." *Commonwealth v. Boyle,* 516 Pa. 105, 112, 532 A.2d 306, 309 (1987). "For a county [trial court] to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county." *Id.; Commonwealth v. Donahue,* 428 Pa. Super. 259, 270, 630 A.2d 1238, 1243 (Super. 1993). "In order to base jurisdiction on an overt act, the act must have been essential to the crime, an act which is merely incidental to the crime is not sufficient." *Boyle,* at 112-13, 532 A.2d at 309-10.

The Supreme Court has also provided that "[a]lthough each court of common pleas within this Commonwealth possesses the same subject matter jurisdiction to resolve cases arising under the Pennsylvania Crimes Code, that jurisdiction should only be exercised beyond the territorial boundaries of the judicial district in which it sits in the most limited of circumstances." *Commonwealth v. Bethea,* at 114, 828 A.2d at 1075. "Rules of venue recognize the propriety of imposing geographic limitations on the exercise of jurisdiction." *Id.* Therefore, "[v]enue in a criminal action properly belongs in the place where the crime occurred. *Id.,* citing *Commonwealth v. Mulholland,* 549 Pa. 634, 702 A.2d 1027 (1997).

In the *Bethea* case, our Supreme Court, in holding that venue in a criminal action properly belongs in the place where the crime occurred, stated:

"This practice recognizes the necessity of bringing a party to answer for his actions in the place where the crime itself occurred because that is where the evidence and witnesses will most likely be. . . . It would be nonsensical to transport defendants, evidence and witnesses from Philadelphia to Erie to resolve criminal charges arising in the former location before a judge and/or jury sitting in the later location. A change of venue from the situs of the action to a different locale is permitted only upon good cause shown. Pa.R.Crim.P. §584." *Id.* at 114, 702 A.2d at 1075.

In this case, defendant, Emily Gross, has been charged with accomplice and co-conspirator liability stemming from Autenrieth's possession of the Taurus handgun in Monroe County. Autenrieth was not permitted to possess

the gun as a result of the final PFA order entered against him on May 18, 2009. We will now review the law applicable to accomplice and conspiracy liability as it pertains to venue and whether the crimes charged against defendant can be prosecuted in Monroe County.

## Accomplice Liability

Accomplice liability is discussed in pertinent part in the Pennsylvania Crimes Code as follows:

"Section 306. Liability for conduct of another; complicity

" (a) General rule.—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

"(b) Conduct of another.—A person is legally accountable for the conduct of another person when:

"(3) he is an accomplice of such other person in the commission of the offense.

"(c) Accomplice defined.—A person is an accomplice of another person in the commission of an offense if:

"(1) with the intent of promoting or facilitating the commission of the offense, he:

"(ii) aids or agrees or attempts to aid such other person in planning or committing it; . . . ." 18 Pa.C.S. §306(a)-(c).

Furthermore, one who aids or agrees or attempts to aid another person in planning or committing an offense may be convicted of the criminal acts of another on proof of the commission of the offense and of the accomplice's

complicity therein. 18 Pa.C.S. §306(g). "To 'aid [and] abet' in the commission of a crime, one must be an active partner in the intent to commit it." *Commonwealth v. Fields,* 460 Pa. 316, 319, 333 A.2d 745, 747 (1975). While this may be established by circumstantial evidence, the proof must be more than would support suspicion or conjecture. *Commonwealth v. Henderson,* 249 Pa. Super. 472, 482, 378 A.2d 393, 398 (1977). "Mere presence at the scene of the crime and knowledge of its commission are not sufficient to prove that one has agreed or attempted to aid or is actually aiding in the commission of an offense." *Id.*

Defendant has been charged with accomplice liability to Autenrieth's possession of the handgun in violation of 18 Pa.C.S. §6105(a)(1), possession of firearm prohibited. Section 6105(a)(1) provides as follows:

"(a)(1) Offense defined.—A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18. Pa.C.S. §6105(a)(1). ˙

Section (c) of the offense proscribes a person who is the subject of an active protection from abuse order issued pursuant to 23 Pa.C.S. §6108 from possessing, using, controlling, selling, transferring or manufacturing a firearm when the order provided for the relinquishment of firearms during the period of time the PFA was in effect. 18 Pa.C.S. §6105(c)(6).

The Commonwealth has also charged defendant with accomplice liability as to section 6115, loan on, or lend-

ing or giving firearms prohibited. That offense provides, in relevant part, that "[n]o person shall make any loan secured by mortgage, deposit or pledge of a firearm, nor . . . shall any person lend or give a firearm to another or otherwise deliver a firearm contrary to the provisions of this subchapter." 18 Pa.C.S. §6115(a).

Applying the law as set forth above to the facts of this case constrains us to hold that venue does not lie in Monroe County. The evidence, when reviewed in light most favorable to the Commonwealth, demonstrates that defendant purchased a handgun in Berks County while in the presence of Autenrieth and then took the gun to his home in Northampton County where she frequently stayed overnight. After Autenrieth showed defendant the use of the firearm, defendant returned the gun to the box in which it came and stored it at Autenrieth's home over his washer and dryer. Defendant was aware that Autenrieth had utilized the weapon for target practice and that he had purchased ammunition to replace that which he had used.

These facts may demonstrate that defendant either directly intended for or tacitly acquiesced to Autenrieth's possession of the firearm in Northampton County. However, these facts do not demonstrate that defendant intended or agreed for Autenrieth to lead police on a high speed pursuit through multiple jurisdictions or for Autenrieth to possess the gun in Monroe County. The record is devoid of any evidence that defendant intended or suspected, much less knew, that Autenrieth would engage in a shootout with police in Monroe County or anywhere else. We find that it was not foreseeable that Autenrieth would engage in such behavior ending in such tragic

results for our law enforcement community in Monroe County.

The record contains no evidence that defendant intended to promote or facilitate Autenrieth's possession, use or control of the gun in Monroe County or that defendant agreed for Autenrieth to possess the firearm in Monroe County. Nor does the record contain any evidence that defendant lent or gave the gun to Autenrieth with the intention that he possess or use it in Monroe County. Furthermore, the charge of unlawfully lending or giving the firearm to Autenrieth could only have occurred in Northampton County, thereby vesting venue in the Northampton County Court of Common Pleas but not in this court. *Commonwealth v. Bethea,* 574 Pa. 100, 114, 828 A.2d 1066, 1075 (2003) (holding that venue in a criminal action properly belongs in the place where the crime occurred). Absent some evidence that defendant intended or agreed for Autenrieth to possess the firearm in Monroe County, we are unable to stretch the concept of accomplice liability to such an extent as to find that venue is vested in this county.

*Conspiracy Liability*

With respect to the charge of criminal conspiracy, section 903(a) of the Crimes Code defines the crime of conspiracy as follows:

"(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

"(1) agrees with such other person or persons that they or one or more of them will engage in conduct which

constitutes such crime or an attempt or solicitation to commit such crime; or

"(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S. §903(a) (1), (2).

The essence of every conspiracy is a common understanding, no matter how it comes into being, that a particular criminal objective be accomplished. *Commonwealth v. Minnich,* 236 Pa. Super. 285, 288, 344 A.2d 525, 526 (1975). Although the evidence must show more than a mere association, a "conspiracy may be inferentially established by showing the relation, conduct, or circumstances of the parties, and the overt acts on the part of the co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." *Id.; Commonwealth v. Horvath,* 187 Pa. Super. 206, 211, 144 A.2d 489, 492 (1958). Just as with proof of accomplice liability under section 306, proof of guilt on a charge of conspiracy fails if it shows only that the accused was present at the scene of the crime and knew of its commission. *Commonwealth v. Roscioli,* 454 Pa. 59, 64, 309 A.2d 396, 399 (1973); *Commonwealth v. Garrett,* 423 Pa. 8, 13, 222 A.2d 902, 905 (1966).

For purposes of venue, it is well settled that within this Commonwealth, the situs of a criminal conspiracy is the "county where the unlawful combination or confederacy was formed, or in any county where an overt act was committed by any of the conspirators in furtherance of that unlawful combination or confederacy." *Commonwealth v. Thomas,* 410 Pa. 160, 164, 189 A.2d

255, 258 (1963). (emphasis in original) An overt act is distinguishable from that which rests merely on intention or design. *Commonwealth v. Mezick,* 147 Pa. Super. 410, 413, 24 A.2d 762, 764 (1942). An overt act as used in the law of conspiracy means an act done in furtherance of the object of the conspiracy. *Id.* In addition, if a conspiracy involves multiple criminal objectives, a person is guilty of only one conspiracy as long as such multiple crimes are the object of the same agreement or conspiratorial relationship. 18 Pa.C.S. §903(c). Generally, a conspiracy is punishable in the same manner and is graded as the most serious offense which is the object of the conspiracy. 18 Pa.C.S. §905(a).

Defendant has been charged as a co-conspirator with Autenrieth with respect to the charge of firearms not to be possessed without a license, 18 Pa.C.S. §6106(a)(1). That section provides, in pertinent part, as follows:

"(a)(1) Any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license . . . commits a felony of the third degree." *Id.*

The statute carves out numerous exceptions to this prohibition, such as allowing the transportation of an unloaded firearm in a secure wrapper from the place of purchase to the purchaser's home. 18 Pa.C.S. §6106(b)(8).

In this case, the record does not contain any evidence of an agreement or overt act committed by defendant in Monroe County with the intent of promoting or facilitating Autenrieth's unlawful possession of a firearm with-

out a license. With respect to the situs of the alleged agreement between Autenrieth and defendant, the criminal complaint in this matter sets forth no connection with Monroe County. None of the allegations place defendant in a position to have reached a conspiratorial agreement with Autenrieth in Monroe County, nor do the allegations place defendant in a position to have aided or intended to promote or facilitate Autenrieth's possession of the gun here.

Additionally, none of the acts alleged to have been committed by defendant in furtherance of the firearms violations occurred in Monroe County. The record is bereft of any evidence that defendant committed an overt act here in furtherance of any of the charges with which she is charged. Venue is appropriate only where an overt act was committed in furtherance of, not subsequent to, conspiracy. As such, any possession of the firearm by Autenrieth in Monroe County subsequent to his acquisition of it in Northampton County does not confer venue on this court.

By way of further explanation, once defendant left the handgun within the control of Autenrieth, the conspiracy was completed, the agreement and intention between Autenrieth and defendant was accomplished and the object of the conspiracy was completed—all of which occurred in Northampton County. Acts that occur after the completed conspiracy cannot possibly be said to have been committed in furtherance of any agreement or conspiracy. Although the criminal complaint contains allegations concerning Autenrieth's later use of the handgun in Monroe County, that use is not an overt act in furtherance of any agreement between defendant and Auten-

rieth or the object of the alleged conspiracy because such object had already been completed—Autenrieth had obtained the firearm.

Our conspiracy statute clearly provides that a "conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired." 18 Pa.C.S. §903(g)(1). Unless evidence exists that the conspirators originally agreed to take certain steps after the principal objective of conspiracy is reached, conspiracy does not continue after the criminal objective is committed. *Commonwealth v. Evans,* 489 Pa. 85, 92-93, 413 A.2d 1025, 1029 (1980).[2]

Furthermore, we can find no case law or precedent in which a court has been asked to find venue to exist where the defendant's contact with the judicial district has been as remote as it has been in this case. In our research, we were unable to find cases where a court exercised jurisdiction in a case where the defendant was never present in the county during either the making of the conspiratorial agreement or commission of an overt act in furtherance of the criminal objective. Nor were we able to find any case or precedent where the court found venue to be proper but the defendant never expressly intended for

---

2. Our Supreme Court held that "[w]here there is evidence that the [co-]conspirators originally agreed to take certain steps after the principal objective of the conspiracy was reached, or evidence from which such an agreement may reasonably be inferred, the conspiracy may be found to continue. . . . The crucial factor is the necessity for showing that the later activities were part of the original plan." *Commonwealth v. Evans,* 489 Pa. 85, 93, 413 A.2d 1025,1029 (1980). (internal citations omitted)

the crime or a part thereof to occur in the county or had contact with the victim while the victim was present in the venue at issue.

Parlaying the lack of precedent or case law as set forth above, we note that defendant was never present in Monroe County during the making of the alleged conspiratorial agreement nor was she ever present during or while committing an overt act in furtherance of the alleged criminal objective. Further, there is no allegation of or evidence that defendant ever intended for Autenrieth to come to Monroe County let alone for him to commit such horrible acts as he did in this jurisdiction. Going one step further, there are no allegations that defendant even had contact with anyone related to Monroe County.

To hold that defendant's criminal liability extends for an unlimited duration of time and at any location at which Autenrieth may have possessed the firearm leads to absurd results. Under such a scenario, defendant could be prosecuted in any state where Autenrieth possessed the gun. If the high speed pursuit had ended in Nevada, for example, and the tragic shootout had taken place in that location, defendant would be able to be tried in that jurisdiction.

Further extending this hypothetical scenario would result in the defendant being subject to criminal charges in each and every jurisdiction in which Autenrieth possessed the handgun in question without any consideration of the statute of limitations for the offenses in question. For example, if Autenrieth had traveled with the gun to Clinton County one month, Bradford County six years later, and Cambria County 10 years thereafter, defendant could have been charged in each of those jurisdictions

without the statute of limitations ever expiring. Under the Commonwealth's theory, each time Autenrieth entered a new jurisdiction with the gun would constitute a new offense by defendant thereby effectively nullifying the statute of limitations in accomplice-and conspiracy cases. Such an expansive view defies all logic and the intentions of our criminal statutes. Thus, defendant's conduct—whether as a co-conspirator or an accomplice, ended at the time she provided the handgun to Autenrieth—all of which occurred in Northampton County.

The Commonwealth argues that Monroe County does in fact have a geographical connection with the course of events that occurred when defendant's co-conspirator (Autenrieth) possessed the firearm in Monroe County throughout his lengthy chase by the police. In support of its position, the Commonwealth cites in its brief several cases which it asserts support its contention that venue is proper in Monroe County. However, a review of the cases cited by the Commonwealth reveals that the Commonwealth's assertions are misplaced. In fact, the cases cited by the Commonwealth are either inapplicable to the instant matter or held that jurisdiction and/or venue did not lie in the county in question.

The first case cited by the Commonwealth is *Commonwealth v. Newton,* 994 A.2d 1127 (Pa. Super. 2010). The Commonwealth cites to *Newton* for the proposition that an overt act need not accomplish the crime in question for conspiracy to occur, but rather only be in furtherance of the object crime. While we agree with the proposition of law asserted, *Newton* held that the evidence in that case was not sufficient to support the defendant's conviction for conspiracy to commit identity

theft. The charge arose out of the defendant's participation in a scheme to ship laptop computers, purchased with a stolen credit card, to South Africa. The court, in vacating the judgment of sentence for conspiracy to commit identity theft, recognized that the record reflects no evidence that the defendant had any awareness that her co-conspirators had committed identity theft in obtaining the stolen credit cards, let alone a shared intent to facilitate the crime of identity theft. Although the Commonwealth cites the *Newton* case in support of proposition that venue in the case at bar should be in Monroe County, we find that *Newton* does not dictate that Monroe County is the correct venue, but rather requires us to find that we are not the appropriate venue for this case. As in *Newton,* the record in the case now before us reflects no evidence that defendant had any awareness that Autenrieth would take the handgun to Monroe County, let alone a shared intent to facilitate Autenrieth taking the gun to Monroe County.

The second case cited by the Commonwealth in support of its contention that venue of the present case should be in Monroe County is *Commonwealth v. Fithian,* 599 Pa. 180, 961 A.2d 66 (2008). We find the *Fithian* case to be inapplicable and distinguishable from our case. *Fithian* concerned the application of our compulsory joinder statute to drug prosecutions. The drug transactions in question involved a defendant who resided in Montgomery County. The defendant arranged a meeting with undercover police from his home, and then met the undercover officer in Delaware County to arrange the drug transaction, but delivered the drugs to the undercover police in Philadelphia County. After delivery of the drugs in Philadelphia County, the defendant was

arrested in Montgomery County and was found to be possessed of additional drugs.

Defendant was charged in Montgomery County with possession with intent to distribute and conspiracy. Defendant was also charged in Delaware County with simple possession, possession with intent to distribute, conspiracy, and possession of paraphernalia. The defendant entered a guilty plea in Montgomery County and filed a motion to dismiss the Delaware charges as being barred by the Montgomery County prosecution under the compulsory joinder statute. The Pennsylvania Supreme Court held that the prosecution for the offense of criminal conspiracy brought in Delaware County was barred by the compulsory joinder rule and the Montgomery County guilty plea. The court further held that that the prosecution for simple possession, possession with intent to deliver, and paraphernalia was not precluded.

We find the *Fithian* case inapplicable to our present case since it dealt solely with the interpretation of our compulsory joinder statute. Even if the matter were applicable to our pending case, it does not mandate venue in Monroe County. In *Fithian,* the defendant had direct contact in each of the counties in which charges were filed against him. He resided in Montgomery County and arranged portions of drug transactions from Montgomery County. The defendant also conducted portions of drug transactions in Delaware County and actually delivered drugs in Philadelphia County. In the case before us now, the record contains no evidence a all that defendant had any contact whatsoever with Monroe County. As such, we do not find *Fithian* to require venue of this case in Monroe County.

The last case cited by the Commonwealth is a Dauphin County Court of Common Pleas case, *Commonwealth v. Keenan,* 33 D.&C.3d 46 (1984). We find the Commonwealth's reliance on *Keenan* to be wholly misplaced since the court in that case found that it had no jurisdiction.

In *Keenan,* the defendants were indicted by grand jury, tried and convicted in Dauphin County in connection with a scheme involving the distribution and sale of counterfeit automobile inspection stickers in the city of Philadelphia. The defendants filed post-trial motions arguing that their alleged criminal activity occurred in Philadelphia and therefore, there was no jurisdictional basis for their joint trial in Dauphin County. The prosecution, on the other hand, argued that the judge supervising the grand jury could establish venue in any county within the Commonwealth pursuant to 42 Pa.C.S. §4551.[3] In effect, the prosecution argued that the supervising judge could establish venue in any county since, under 42 Pa.C.S. §931, every court of common pleas has original jurisdiction for criminal cases, but failed to cite to any authority to corroborate such a theory. *Id.* at 48-49.

The common pleas court ultimately concluded that neither jurisdiction nor venue was proper in Dauphin County. In reaching its conclusion, the Dauphin County court stated:

---

3. 42 Pa.C.S. §4551 applies to prosecution by an attorney general when a multicounty investigating grand jury returns a presentment against any person and states that the supervising judge shall select the county for conducting the trial from among those counties having jurisdiction. 42 Pa.C.S. §4551(c)(d).

"It is true that 42 Pa.C.S. §931(a), in its broad grant of 'unlimited original jurisdiction of all actions and proceedings,' does vest courts of common pleas with jurisdiction to hear criminal matters.

"However, jurisdiction in criminal cases has further requirements of the occurrence of an overt act in the county. (citation omitted) The broad grant of authority in section 931 is a far cry from clothing all common pleas courts with jurisdiction to try any criminal case, regardless of where the crime occurred." *Id.* at 49-50.

The Commonwealth cites *Keenan* for the proposition that "[w]here a conspiracy is alleged, an overt act committed in a county by any one of the conspirators is sufficient for the county to assert jurisdiction over all." While we agree with the above cited legal proposition, we disagree with the Commonwealth that the *Keenan* case supports a finding of venue in Monroe County in the case now pending since the *Keenan* court ultimately found that it did not have jurisdiction in that case. Extrapolating the theories from the *Keenan* case to the facts of our case supports our conclusion that neither venue nor jurisdiction is vested in Monroe County.

Finally, we feel compelled to address the letter the Commonwealth solicited from the district attorney of Berks County indicating that the Berks County DA would relinquish to Monroe County the prosecution of any offenses which could have been brought in Berks County. Although the district attorney from Berks County may agree that Monroe County can assume the prosecution of this case including the acts which took place in Berks County, we are forced to disregard such agreements. Having found that venue is improper in Monroe County,

we are unable to assume prosecution of the acts that occurred in Berks County.

For the reasons stated above, venue for accomplice liability and conspiracy is proper in Northampton and Berks, and venue for unlawful lending and possession is proper in Northampton. Accordingly, while the Northampton and Berks County Courts of Common Pleas are appropriate venues to hold defendant accountable for her conduct in those counties, we are constrained to find that this court is not. Having reached this conclusion, we need not and cannot address the remaining issues raised in defendant's omnibus pretrial motion, motion for habeas corpus and motion to compel bill of particulars. Those issues are more properly addressed by either the Northampton or Berks County Court of Common Pleas upon the filing of charges against the defendant in one of those judicial districts.

Accordingly, we enter the following order.

## ORDER

And now, July 15, 2010, upon consideration of defendant's omnibus pretrial motion, this matter is dismissed for improper venue.