J-S15029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| TIRELL WILLIAMS | |
| Appellant | No. 1434 MDA 2014 |

Appeal from the Judgment of Sentence of March 27, 2014
In the Court of Common Pleas of Lycoming County
Criminal Division at No.: CP-41-CR-0002010-2012

BEFORE: LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY WECHT, J.: **FILED MARCH 20, 2015**

Tirell Williams appeals the March 27, 2014 judgment of sentence, which the trial court imposed following Williams' conviction by a jury of two counts of robbery, and one count each of theft by unlawful taking and simple assault.[1] Specifically, Williams contends that there was insufficient evidence to sustain his conviction of robbery pursuant to 18 Pa.C.S. § 3701(a)(1)(ii) and, in the alternative, that the verdict ran contrary to the weight of the evidence. We affirm.

The trial court has provided the following factual and procedural history of this case:

---

[1] **See** 18 Pa.C.S. §§ 3701(a)(1)(ii), 3701(a)(1)(iv), 3921(a), and 2701(a)(1), respectively.

On the night of January 5, 2012, Michael Stewart (Stewart) met Amy Baird (Baird) at a bar, where Stewart had two pitchers of beer and Baird had more than three drinks. After spending some time at the bar, Stewart and Baird went to Baird's house. At the house, Baird told Stewart that she wanted marijuana, and Stewart gave Baird money to pay for marijuana. Baird used Stewart's phone to order marijuana. An individual, who was not [Williams], came to Baird's house and sold Baird a bag of drugs. About thirteen minutes later, Baird and Stewart realized that the bag contained a drug that was not marijuana. Baird again used Stewart's phone to call the individual who had originally delivered the drugs. Baird asked the individual to come back to the house with marijuana. When the individual came back, he was with [Williams] and two other people. The individual, [Williams], and the two other people will be referred to as the group.

Baird testified that she and [Williams] went to the upstairs of the house. A short time later, they returned downstairs, where they saw the three others in the group and Stewart in the kitchen. Baird testified that she again went upstairs, this time alone. Baird testified that while she was upstairs, she heard a commotion downstairs. Therefore, she went downstairs, where she saw the group stomping and punching Stewart, while he was on the kitchen floor. As mentioned above, the group included [Williams].

Stewart testified that the group surrounded him while he was in the kitchen cleaning up hot oil. He testified that while he was talking with one member of the group, another member would start talking to him. Stewart testified that he was talking to [Williams] when he heard another member of the group say, "Yo partner, let me talk to you." Stewart testified that he turned to talk to the member who made the "partner" comment and was then struck in the back of the head by [Williams]. Stewart testified that the group beat him and punched him. One member of the group hit him in the head with a glass bottle, which caused him to fall to the floor. Stewart testified that he did not know which member hit him with the bottle. Stewart testified that while he was on the floor, the group kicked him and stomped him all over his body. Stewart testified that he rolled up into the fetal position to protect himself.

Stewart testified that[,] while he was on the floor, one member of the group said, "Stand this [MF] up, so I can shoot him."

Stewart did not know which member said this, but he felt the members trying to grab his arms to stand him up. Stewart testified that he did not let the group stand him up because he was scared that he would be shot and killed. Stewart testified that one member of the group poured hot oil on him. Stewart testified that he did not know which member poured the oil on him. After feeling the hot oil, Stewart got up and ran into the living room.

Stewart testified that[,] while he was on the floor, he could feel members of the group going through the pockets of his pants. He testified that[,] before the incident, he had his wallet and cell phone in his pockets. Stewart testified that after the incident, he no longer had his wallet and cell phone.

After the incident, Baird called [the] police. Officer Mark Lindauer (Lindauer) of the Williamsport Bureau of Police responded to the call. Lindauer noticed that there was grease and broken glass on the kitchen floor.

Stewart was taken to the hospital by ambulance. As a result of the incident, he had a one[-]inch laceration on his head and a headache for three to four days. In addition, he was bruised and stiff for a week.

On October 24, 2013, a jury found [Williams] guilty of Count 1 Robbery (threaten another with or intentionally put another in fear of immediate serious bodily injury), Count 3 Robbery (inflicting bodily injury), Theft by Unlawful Taking, and Simple Assault. On March 27, 2014, this [c]ourt sentenced [Williams] to a minimum of six years and a maximum of twelve years in a state correctional institution. The [c]ourt also sentenced [Williams] to eight years of supervision under the Pennsylvania Board of Probation and Parole to run consecutively to the prison term.

Trial Court Opinion ("T.C.O."), 6/28/2014, at 1-3 (footnotes omitted).

On April 4, 2014, Williams timely filed post-sentence motions. Therein, he contested the sufficiency of the evidence and, in the alternative, contended that the verdict was contrary to the weight of the evidence. On July 28, 2014, the trial court filed an opinion and order denying Williams'

post-sentence motions. On August 26, 2014, Williams timely filed a notice of appeal. On August 28, 2014, the trial court issued an order directing Williams to file a concise statement of the errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within thirty days of the date of the order. Williams timely complied on September 26, 2014. The trial court thereafter issued the above-excerpted opinion rejecting Williams' claims.

Before this Court, Williams presents the following issues:

1. Whether the evidence presented at trial was sufficient to support the jury's verdict of guilt beyond a reasonable doubt on Count 1, Robbery pursuant to 18 Pa.C.S. § 3701(a)(1)(ii)?

2. Whether the jury's verdict of guilt beyond a reasonable doubt on Count 1, Robbery pursuant to 18 Pa.C.S.A. § 3701(a)(1)(ii) was contrary to the weight of the evidence presented at trial?

Brief for Williams at 8. Notably, Williams does not challenge the sufficiency of the evidence to sustain his other convictions, including robbery under subsection 3701(a)(1)(iv) (inflicts injury) and theft by unlawful taking.

The trial court noted that Williams, in his post-sentence motions, relied upon precisely the same averments in support of his sufficiency and weight of the evidence challenges. Those averments in substance pertained to the sufficiency of the evidence. Consequently, the trial court addressed only the sufficiency of the evidence. *See* T.C.O. at 6. Williams' arguments to this Court also are materially identical to each other, and more resemble one challenge to the sufficiency of the evidence.

When examining a challenge to the sufficiency of evidence:

The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder['s]. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa. Super. 2005)).

By contrast, a defendant who seeks a new trial on the basis that the verdict was contrary to the weight of the evidence "concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). When reviewing a trial court's ruling that the verdict was not contrary to the weight of the evidence, we review the trial court's exercise of discretion, rather than the underlying question of whether the verdict is against the weight of the evidence. *Commonwealth v. Smith*, 985 A.2d 886, 888 (Pa. 2009). Because the jury is free to believe all, part, or none of the evidence presented, a new trial should not be granted merely because the judge, on the same facts, would have arrived at

a different conclusion. *Widmer*, 744 A.2d at 752. Instead, "the role of the trial judge is to determine that[,] notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* Hence, the trial court should award a new trial only when the jury's verdict is "so contrary to the evidence as to shock one's sense of justice[,] and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994). In effect, "the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Ramtahal*, 33 A.3d 602, 609 (Pa. 2011).

We begin by noting that Williams' arguments arguably are insufficient to merit review under our appellate rules. Pennsylvania Rule of Appellate Procedure 2119(a) provides that an appellant must, in support of his argument, provide "such discussion and citation of authorities as are deemed pertinent." This Court has held that, "[w]hen the appellant fails to adequately develop his argument, meaningful appellate review is not possible. This Court will not act as new counsel." *Commonwealth v. Genovese*, 675 A.2d 331, 334 (Pa. Super. 1996). Beyond two paragraphs containing the legal standards governing challenges to the sufficiency of the evidence and the elements that must be proved to sustain a conviction of robbery, Williams' argument comprises only two paragraphs. The same is true of his purported challenge to the weight of the evidence. As to both

- 6 -

issues, Williams provides no citations to apposite authority[2] and no citations to the record.[3]  Similarly, in violation of Rule 2117(a)(4), Williams fails to provide "an appropriate reference . . . to the place in the record where the evidence substantiating the fact relied on may be found" for **any** of his references to the evidence in his statement of the case.

On these bases alone, we might dismiss Williams' appeal.  ***See Commonwealth v. Adams***, 882 A.2d 496, 498 (Pa. Super. 2005).  We will not do so.  However, these deficiencies combined with the brevity and redundancy of his weight of the evidence argument lead us to deem that argument waived for want of any argument that is substantiated or materially distinct from his sufficiency argument.

"A person is guilty of robbery if, in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury."  18 Pa.C.S. § 3701(a)(1)(ii).  In support of his evidentiary insufficiency argument, Williams avers as follows:

_____

[2]    Because of the fact-intensive nature of challenges to the sufficiency and weighing of the evidence, as well as the small number of successful challenges to each, we do not intend to suggest that apposite authority is necessary to prevail on either claim.  We note the omission, however, to underscore that Williams argument is quite limited in general, which is exacerbated by the failure to mention even authority that is at least partially on-point.

[3]    This violates Rule 2119(c), which provides that when "reference is made to the . . . evidence, . . . the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears."

[T]he Commonwealth failed to present any evidence that [Williams] committed or attempted to commit a theft. The only evidence the Commonwealth presented was that Stewart testified that someone's hands went through his pockets, and that after the episode, he could not find his phone. He could not identify whose hands they were. Even looking at the evidence in a light most favorable to the Commonwealth, those facts alone are not sufficient to find [Williams] guilty of Robbery. Stewart did not testify whose hands were going through his pockets. The police officer who responded to the scene did not even investigate any missing items. Furthermore, there was no testimony that any of the alleged missing items were found on [Williams] or any of the other men who were in the apartment. Mr. Stewart was certainly assaulted, and what he went through was certainly terrifying, but there is simply no evidence that [Williams] took even a substantial step toward[] committing a theft.

Similarly, even if there was a theft, there is not sufficient evidence that [Williams] threatened or placed Stewart in fear of immediate serious bodily injury. There is no evidence that [Williams] personally poured the hot oil on him. There is no evidence that [Williams] was the person that said, "stand him up so I can shoot him." Simply put, when you combine all of the aforementioned facts, even doing so in the light most favorable to the Commonwealth, the combination fails to sufficiently prove beyond a reasonable doubt that [Williams] committed the crime of robbery.

Brief for Williams at 14.

Curiously, in challenging only his conviction for robbery under subsection 3701(a)(1)(ii), Williams all but concedes that he was guilty, as a principal or an accomplice, of the other charges of which he was convicted— *i.e.*, robbery pursuant to subsection 3701(a)(1)(iv) ("if, in the course of committing a theft, he . . . inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury"), simple assault, and theft by unlawful taking. That is to say, despite the fact

that he now contests, *inter alia*, the sufficiency of the evidence to establish that a theft even occurred, he does not contest the sufficiency of the evidence of theft by unlawful taking or to establish his other unchallenged robbery charge, which, of course, also could be established only if a theft occurred. ***See*** 18 Pa.C.S. § 3701(a)(1)(iv).

The Commonwealth, unlike the trial court, emphasizes that the jury was instructed on accomplice liability and could properly have convicted Williams on that basis alone.[4] The statute governing accomplice liability provides, in relevant part, as follows:

> **(a)   General rule.—**A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legall accountable, or both.
>
> **(b)   Conduct of another.—**A person is legally accountable for the conduct of another person when:
>
> * * * *
>
> (3)      he is an accomplice of such other person in the commission of the offense.
>
> **(c)   Accomplice defined.—**A person is an accomplice of another person in the commission of an offense if:
>
> (1)      with the intent of promoting or facilitating the commission of the offense, he:
>
> * * * *

---

[4]      Although the record does not contain a transcript of the jury charge in this matter, it does include the parties' discussion with the trial court concerning the provision of an accomplice liability instruction. The court proposed to give such an instruction and Williams' counsel stated clearly that he had no objection to such an instruction. ***See*** Notes of Testimony, 10/24/2013, at 157-58.

> (ii)   aids or agrees or attempts to aid such other person in planning or committing it . . . .

> * * * *

> **(d)   Culpability of accomplice.—**When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

18 Pa.C.S. § 306.

This Court has elaborated on these principles as follows:

> "A person is legally accountable for the conduct of another person when he is an accomplice of that person in the commission of [an] offense." ***Commonwealth v. Orlowski***, 481 A.2d 952, 960 (Pa. Super. 1984); ***see*** 18 Pa.C.S. § 306.

> > An accomplice is one who "knowingly and voluntarily cooperates with or aids another in the commission of a crime." ***Commonwealth v. Carey***, 439 A.2d 151, 158 (Pa. Super. 1981); ***see*** 18 Pa.C.S. § 306; ***see also Commonwealth v. Jones***, 247 A.2d 624, 626 (Pa. Super. 1968).  To be an accomplice, "one must be an active partner in the intent to commit [the crime]." ***Commonwealth v. Fields***, 333 A.2d 745, 747 (Pa. 1975); ***Commonwealth v. McFadden***, 292 A.2d 358, 360 (Pa. 1972).  "An [accomplice] must have done something to participate in the venture." ***Commonwealth v. Flowers***, 387 A.2d 1268, 1270 (Pa. 1978).

> ***Commonwealth v. Brady***, 560 A.2d 802, 805 (Pa. Super. 1989).  However, "**[t]he least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice**." ***Commonwealth v. Graves***, 463 A.2d 467, 470 (Pa. Super. 1983); ***see Commonwealth v. Coccioletti***, 425 A.2d 387, 390 (Pa. 1981).

- 10 -

***Commonwealth v. Calderini***, 611 A.2d 206, 208 (Pa. Super. 1992) (citations modified; emphasis added).

The trial court, without referring to accomplice liability, reasoned as follows:

> The circumstances show that [Williams] intentionally put Stewart in fear of immediate serious bodily injury. [Williams] was a member of a group that surrounded Stewart. The circumstances show that the group meant to intimidate Stewart . . . .
>
> * * * *
>
> [Williams'] physical attack on Stewart further shows that [Williams] intentionally put Stewart in fear of immediate serious bodily injury. [Williams] struck Stewart in the back of the head. Stewart was then hit in the head with a bottle and fell to the floor. While Stewart was on the floor in a defenseless position, [Williams] kicked him and stomped him. Stewart testified that he was in the fetal position when the group was beating him. This indicates that Stewart was in fear of immediate serious bodily injury.
>
> Even if [Williams] was not the one who threatened to shoot Stewart, [Williams] was a member of a group that took action in response to the threat. Stewart testified that when he heard the shooting threat, he believed his life was in danger. Stewart testified that members of the group tried to grab his arms to stand him up. [Williams], therefore, intentionally put Stewart in fear of immediate serious bodily injury.

T.C.O. at 5.

The record supports the trial court's account. Stewart testified that Williams struck him in the head. ***See*** Notes of Testimony ("N.T."), 10/24/2013, at 44. Stewart further testified that, immediately after Williams struck him, the group surrounding him, which included Williams, collectively kicked and stomped him until he dropped into the fetal position,

- 11 -

whereupon the beating continued. *Id.* at 44-46. Stewart testified that, while he was on the ground, members of the group rifled through his pockets, removing his wallet and mobile phone and attempting in vain to remove his keys, which were attached to him by a chain. *Id.* at 45. While some members of the group were going through Stewart's pockets, some or all of the others continued to strike and kick him. *Id.* at 49. During the group's assault, one "gentleman," as Stewart generously described him, said "stand this MF up so that I can shoot him," which prompted Stewart to fear that his "life was in danger now completely." *Id.* at 48. When the group tired or lost interest, they stopped striking Stewart and poured hot cooking oil on him.[5]

Reviewing this evidence through the lens of our deferential standard of review, we find it sufficient to have enabled the jury to conclude beyond a

_____

[5] Based upon the testimony and the dearth of evidence of serious burn injuries, the oil evidently was warm enough only to cause discomfort, not to cause serious injury. *See* N.T. at 49 (Stewart: "It was hot enough that it had a little ting to it and everything, that it actually hurt."). According to Stewart's testimony, the oil, which had originally been heated to fry chicken wings, had been removed from heat shortly before the group returned to his residence because a grease fire had ensued when Baird inserted frozen wings directly into the oil. The two managed to contain and extinguish the fire, and Stewart was in the process of cleaning up the mess when the group returned. *See id.* at 40-43. That being said, there is no reason that the group would have known that a pot of oil found on a stove was not heated to a potentially calamitous temperature. In any event, whether the group intended to scald Stewart with hot oil is immaterial to Williams' culpability in the robbery.

reasonable doubt that Williams was guilty, either principally or as an accomplice, of robbery pursuant to subsection 3701(a)(1)(iv). As set forth above, the relevant statute provides that a person commits a robbery if, "in the course of committing a theft, he threatens another with or intentionally puts him in fear of immediate serious bodily injury." Stewart's testimony (if not the admission tacit in Williams' decision not to contest the sufficiency of the evidence to sustain his other convictions for robbery and theft by unlawful taking) by itself constituted sufficient evidence to establish that the group committed a theft and that Williams and/or his cohort (with Williams' complicity and general participation) put Stewart in fear of immediate serious bodily injury. The jury was free to credit this testimony. Furthermore, viewed as a whole, the evidence more generally established a basis upon which the jury could conclude beyond a reasonable doubt that Williams was an active and willing participant in events constituting a robbery based upon the infliction or threat of serious bodily injury: He remained in the group and did not stray during the assault and theft, and he personally struck Stewart. No more was necessary to establish a proper basis for the verdict.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2015